IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1.   LINDA SEPULVEDA, | ) | |
| | ) | |
|        Plaintiff, | ) | |
| v. | ) | CIV-13-808-W |
| | ) | |
| 1.   NEXTCARE OKLAHOMA, LLC d/b/a NEXTCARE URGENT CARE and ACCESS MEDICAL CENTERS f/k/a OKLAHOMA CLINICAL ASSOCIATES | ) ) ) ) ) | |
| | ) | ATTORNEY LIEN CLAIMED |
|        Defendant. | ) | JURY TRIAL DEMANDED |

## COMPLAINT

**COMES NOW** the Plaintiff, Linda Sepulveda, and for her Complaint in the above-entitled action, alleges and states as follows:

## PARTIES

1. Plaintiff, Linda Sepulveda, is an adult female resident of Oklahoma County, Oklahoma.

2. Defendant NextCare Oklahoma LLC d/b/a NextCare Urgent Care and Access Medical Centers f/k/a Oklahoma Clinical Associates, LLC is an entity doing business in Oklahoma County, Oklahoma.

## JURISDICTION AND VENUE

3. This is a cause of action arising out of Plaintiff's former employment with Defendant based on Plaintiff's claims of (a) age discrimination in violation of the ADEA,

1

(b) gender discrimination in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e, *et seq.*) and (c) violations of the Equal Pay Act.

4. This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §1331.

5. All of the actions complained of herein occurred in Oklahoma County, Oklahoma. Defendant is doing business in such county and may be served in said county. Oklahoma County is located in the Western District of Oklahoma. Wherefore, venue is proper in this Court under 28 U.S.C. § 1391(b).

6. Plaintiff has exhausted her administrative remedies by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about February 6, 2013. Plaintiff received her Dismissal and Notice of Rights letter from the EEOC dated May 15, 2013 (received by Plaintiff by mail thereafter), and has timely filed this action within ninety (90) days of receipt of the notice of right to sue.

## STATEMENT OF FACTS

7. Plaintiff, Linda Sepulveda, was born in October 1949, making her over the age of forty (40) at all times relevant hereto.

8. Sepulveda was hired as a licensed practical nurse ("LPN") by Defendant in or around October 2001. In or around Spring 2002, Sepulveda was promoted to Operations Manager. In her role as Operations Manager, Sepulveda assisted in the opening of seven (7) additional facilities in the Oklahoma City metro area for Defendant. She supervised four (4)

of Defendant's eight (8) clinics and directly supervised the individual over the other four (4) clinics. Her job performance while employed was at least satisfactory, if not excellent.

9. In or around July 2009, John McKellar was hired as Chief Operating Officer for Defendant.

10. Shortly thereafter, in or around November 2009, Sepulveda was demoted from her position as Operations Manager to Coordinator at Defendant's Norman Clinic. McKellar took over Sepulveda's supervisory duties over the eight (8) clinics. Sepulveda was told by Owner Dr. Kevin Conaster that the reason for her demotion was that her job duties were being given to McKellar because she "could not do what he (McKellar) does." However, such reason was false. McKellar had no experience in the medical field. In fact, McKellar opened a ninth clinic for Defendant using the template developed by Sepulveda. McKellar was paid almost twice as much as Sepulveda to perform the same duties.

11. Further, Sepulveda was told by Owner Dr. Bruce Cornett that she had been accused of making comments regarding McKellar previously being a shirt salesman, which played a roll in her demotion. However, comments regarding McKellar's past experience in retail were made by several employees and doctors throughout the company, although Sepulveda was the only person counseled for such alleged statements.

12. Thereafter, Sepulveda was approached by Dr. Darrin Webster who thanked her for her service and apologized for her removal as Operations Manager. Sepulveda responded that she "understood [Defendant] may not want an older woman running their company."

Dr. Webster did not deny Sepulveda's statement.

13. After her demotion, McKellar became Sepulveda's immediate supervisor. McKellar treated Plaintiff less favorably than other employees. For instance, McKellar avoided asking Sepulveda any questions, even if they related directly to her job, and would instead ask less experienced, younger employees. Additionally, McKeller made decisions without notifying Sepulveda. For instance, each time a new clinic was opened, a new EKG machine would be purchased and given to the busiest clinic, with that clinic's old machine being transferred to the new, slower clinic. Instead, McKeller purchased a new machine for the new clinic, causing confusion and resulting in complaints made to Sepulveda from employees and providers.

14. Additionally, McKeller told Sepulveda not to contact Drs. Cornett, Conatser, or Webster with work-related issues. In one instance, Sepulveda reported an emergency situation to McKellar, but he did not understand the urgency of the medical issue and did not provide assistance. Sepulveda was forced to call Dr. Webster for help, as the situation concerned suspected fatalities at the clinic.

15. Further, McKellar frequently asked Sepulveda when she was going to retire. In response, Sepulveda indicated that she had no immediate plans to retire from her employment with Defendant.

16. In or around October 2011, Sepulveda was asked to take over Coordinator and managerial responsibilities for other clinics in addition to the Norman clinic. Ultimately,

4

Sepulveda was given these responsibilities over the Norman, Midwest City, Tri-City and Mustang clinics. Sepulveda was not given additional compensation for the added responsibilities, nor was she reimbursed for mileage when she traveled between clinics.

17. In or around May 2012, Sepulveda and other employees were notified by Dr. Cornett that Defendant was being purchased by another company. During this discussion, Dr. Cornett expressed that he was concerned Sepulveda would not be retained because she was the "closest to the grave", i.e., the oldest employee working for Defendant.

18. In or around June 2012, Sepulveda's responsibilities for the Midwest City and Mustang Clinics were abruptly removed by McKeller. McKeller told Sepulveda the reason for the removal was that Sepulveda was "going to retire" and he "need[ed] a job with the new company." Sepulveda had given McKellar no indication that she had immediate desires to retire. And, although McKellar stated she would no longer have responsibilities over the Midwest City and Mustang Clinics, Sepulveda was required to continue processing payroll and answering calls for such Clinics.

19. On or about September 11, 2012, Sepulveda was told by Dr. Cornett that she could resign or be terminated. She was told the reason for her termination was allegedly due to an employee complaint. Specifically, Sepulveda had requested documentation for absences which an employee alleged were related to medical conditions of the employee and a family member of the employee. The employee allegedly complained about Sepulveda's requests for documentation. Faced with no option to retain her position with Defendant,

5

Sepulveda submitted her forced resignation and was, thereby, terminated.

20. Such reason proffered for Sepulveda's termination was merely pretext. Particularly, Sepulveda was previously told by Wanda Lassiter, Human Resources, that a doctor's note and FMLA documentation were needed for the employee.

21. As a result of the foregoing, Sepulveda has suffered damages as described below.

### COUNT I - ADEA

For her first cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows.

22. The matters alleged above constitute violations of the ADEA in the form of age discrimination.

23. Plaintiff is entitled to relief under the ADEA because, at all times relevant to this action, she was over the age of forty (40), was satisfactorily performing her job, was demoted and terminated, and she was replaced by a significantly younger individual and treated less favorably that similarly situated, younger employees.

24. As damages, Plaintiff has suffered lost earnings, past and future, and other equitable and compensatory damages allowed by the Civil Rights Act of 1991. Plaintiff is also entitled to liquidated damages based upon Defendant's willful conduct.

### COUNT II - TITLE VII: Gender Discrimination

For her second cause of action, Plaintiff incorporates all prior allegations and further

alleges and states as follows:

25. The matters alleged above constitute violations of Title VII of the Civil Rights Act in the nature of gender discrimination.

26. As damages, Plaintiff has suffered lost earnings, past and future, and emotional distress.

27. Because the actions of Defendant were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages as provided by the Civil Rights Act of 1991.

### COUNT III- Equal Pay

For her third cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

28. The acts above-described constitute a violation of the Equal Pay Act which prohibits wage disparity based on gender.

29. While employed with Defendant, Plaintiff received less pay for the same or similar duties as McKellar.

30. As the direct and proximate result of Defendant's actions, Plaintiff has suffered lost wages and is entitled to her lost income, past and future, and such remedies as the law may allow including remedies for the willful nature of the discrimination.

### REQUEST FOR RELIEF

**WHEREFORE,** Plaintiff prays that this Court enter judgment in favor of the Plaintiff

and against the Defendant and assess actual, compensatory, punitive damages, and liquidated damages, together with pre- and post-judgment interest, costs, attorney's fees and such other relief as this Court may deem equitable and appropriate.

**RESPECTFULLY SUBMITTED THIS 2nd DAY OF AUGUST, 2013.**

>s/ Jana B. Leonard
>JANA B. LEONARD, OBA# 17844
>SHANNON C. HAUPT, OBA # 18922
>LAUREN W. JOHNSTON, OBA # 22341
>LEONARD & ASSOCIATES, P.L.L.C.
>8265 S. WALKER
>OKLAHOMA CITY, OK 73139
>(405) 239-3800      (telephone)
>(405) 239-3801      (facsimile)
>leonardjb@leonardlaw.net
>haupts@leonardlaw.net
>johnstonlw@leonardlaw.net
>JURY TRIAL DEMANDED
>ATTORNEY LIEN CLAIMED